**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ANGELA BEARDEN, ALLEN PRYOR,** | ) | |
| **and JERRY LEMBERGER, on behalf of** | ) | |
| **themselves and other similarly situated** | ) | |
| **persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 2:11-cv-03104-SHM-dkv** |
| | ) | |
| **AAA AUTO CLUB SOUTH, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO CONDITIONALLY**
**CERTIFY CLASS AND FACILITATE NOTICE**

Defendant AAA Auto Club South, Inc. ("ACS") respectfully submits its opposition to Plaintiffs' Motion to Conditionally Certify Class and Facilitate Notice.

## INTRODUCTION

ACS is a member club of the American Automobile Association (AAA), a national not-for-profit organization that provides its members with benefits related to travel, emergency roadside assistance, and insurance. The three named Plaintiffs were employed by ACS as Membership Sales Representatives ("MSRs") at its Memphis, Tennessee and Melbourne, Florida offices. Plaintiffs claim that they were improperly classified as exempt under the Fair Labor Standards Act ("FLSA") and that they should have been paid minimum wages and overtime. They allege they "spent significantly more than half their working time" making sales by

1

telephone.[1]  Importantly, however, they are not claiming that all MSRs were misclassified and acknowledge that some MSRs made sufficient outside sales to qualify for the outside sales exemption.  Nevertheless, they have filed a collective action complaint and now seek to conditionally certify a class of MSRs "whose primary duty and/or activity was inside sales."  Of course, this begs the question of how ACS, the Plaintiffs or the Court would determine to whom the notice should be sent since the Plaintiffs suggest ACS does not keep track of those who meet the exemption and those who do not.  As Plaintiffs acknowledge that the alleged FLSA violation did not affect all MSRs, it is entirely improper to certify a class.

Additionally, the evidence establishes that MSRs operate independently at ACS' approximately 70 offices in Florida, Georgia, and Tennessee, engaging in different outside sales methods and different amounts of time spent on various activities, whether out in public places or telephone calling.  Specifically, MSRs, including Plaintiffs, were responsible for selling AAA memberships to potential customers through a variety of sales methods, including through group employer accounts, wherein MSRs sell memberships at an employer's site to that employer's employees; at tables or booths at various locations or events, such as malls, home shows, or expos; business canvassing, which involves going business to business to sell memberships to either that business or the customers who frequent the business; attending networking events, such as chamber of commerce events; and by making telephone calls.[2]  Because MSRs are, in fact, engaged in field work, ACS classified MSRs as exempt under the FLSA based on the

---

[1] As addressed below, even this allegation falls short of establishing Plaintiffs are non-exempt as they can spend significantly more than half their time phone calling and still be exempt under the outside sales exemption.

[2] As to the latter, ACS provides its MSRs lists of possible customers to call in an attempt to generate sales.  Phone calling is only one of many sales activities.  On the other hand, ACS has phone centers where non-exempt employees of those call centers do nothing but attempt to make telephone sales.

outside sales exemption.   Any suggestion by Plaintiffs (or their former disgruntled Sales Manager Tom Sachse) that they were in a telemarketing position flies in the face of how MSRs actually perform sales duties at branches throughout ACS, including the Memphis branch at which Sachse formerly worked.

Plaintiff's Motion should be denied because Plaintiffs have not and cannot establish they are similarly situated to the potential class, and the individualized nature of this position and how it is performed clearly makes certifying a class impracticable.

## ARGUMENT

I.     **The Court Should Exercise its Discretion to Deny Conditional Certification Because Plaintiffs Cannot Meet the Sixth Circuit's Standard for Conditionally Certifying a Class Under the FLSA.**

Plaintiffs have moved to conditionally certify a class under 29 U.S.C. § 216(b), in a case in which they simply cannot show they are similarly situated to all potential opt-ins; therefore, the Court can exercise its absolute discretionary power to deny the sending of notice to potential class members.   *Hipp v. Liberty National Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp.2d 957, 959 (W.D. Mich. Dec. 3, 2009). The United States Supreme Court has made it clear that the Court's discretion regarding notice should be exercised only "in appropriate cases," where the plaintiffs have met their burden. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).   In exercising its discretion, the Court must avoid stirring up litigation through unwarranted solicitation.   *Pacheco*, 671 F. Supp. 2d at 960 ("It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.") (quoting *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003)); *D'Anna v. M/A-Comm, Inc.*, 903 F.

Supp, 889, 894 (D. Md. 1995) (stating that companies "should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.").

The standard for conditionally certifying a collective action in the Sixth Circuit was set out in *O'Brien v. Ed Donnelly Enters, Inc.*, 575 F.3d 567 (6th Cir. 2009). There, the Sixth Circuit noted that the Court must be satisfied that the plaintiffs in a FLSA collective action are "similarly situated." *Id*. at 583. While the Sixth Circuit recognized that the FLSA provides no guidance as to the meaning of the term "similarly situated," the Court held that plaintiffs are "similarly situated" when "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy **proves a violation as to all the plaintiffs.**" *Id*. at 585 (emphasis added). The Court further stated that plaintiffs are "similarly situated" when their claims are "unified by common theories of defendants' statutory violations." *Id.* at 585. The Plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *Id.* at 584; *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn. Apr. 10, 2008) ("Plaintiffs who seek to certify a collective action under the FLSA bear the burden to establish that they and the class they wish to represent are similarly situated.") (quoting *Crawford v. Lexington-Fayette Urban County Gov't.*, Civil Action No. 06-299-JBC, 2007 WL 293865 at *4 (E.D. Ky. Jan. 26, 2007)).

While it is true that this standard has been described as "fairly lenient," district courts in this Circuit have continued to exercise their discretion and deny motions to conditionally certify a class after *O'Brien*. *See, e.g.*, *Bernal v. Trueblue, Inc.*, Case No. 1:08-CV-507, 2010 U.S. Dist. LEXIS 49354, at *15 (M.D. Mich. May 19, 2010); *Arrington v. Michigan Bell Telephone Co.*, Case No. 10-10975, 2011 U.S. Dist. LEXIS 84234, at *17 (E.D. Mich. Aug. 1, 2011); *Pacheco,*

671 F. Supp.2d at 966.  As shown below, if there was ever a class that should not be certified under the Sixth Circuit's standard, this is the case.

## II.     Plaintiffs Failed to Show That MSRs Suffered From a Single FLSA-Violating Policy.

### A.     The Outside Sales Exemption.

In classifying its MSRs as exempt, ACS relies on the outside sales exemption.  As Plaintiffs acknowledge in their Motion, this case comes down to whether the Plaintiffs qualified for the outside sales exemption.  (Pls. Memo. at 5, Dkt. No. 11.)

The FLSA exempts "any employee employed . . . in the capacity of outside salesman" from its minimum wage, overtime, and timekeeping requirements. 29 U.S.C. § 213(a).  The Department of Labor defines the term "employee employed in the capacity of outside salesman" as any employee:

> (1) Whose primary duty  is:
>
>> (i) making sales within the meaning of section 3(k) of the Act, or
>>
>> (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500.  Additionally, "work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work."  29 C.F.R. § 541.503(a); *Nielsen v. Devry Inc.*, 302 F. Supp. 2d 747,  761 (W.D. Mich. 2003).

Here, the first requirement of the test is satisfied, since Plaintiffs agree their primary duty was sales.  In each Plaintiffs' Declarations, they state, "My job was to sell memberships in

ACS."[3]  (Dkt. Nos. 12, 13, 14 ¶ 2).  The only issue here is whether  Plaintiffs' work satisfied the second element, that is, whether they were "customarily and regularly" away from ACS in conducting sales activities, including promotional activities for their own sales.

The regulations state that customarily and regularly "means a frequency that must be greater than occasional but which, of course, may be less than constant.  Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated one-time tasks."  29 C.F.R. § 541.701.  The phrase "customarily and regularly" is not a "majority of the time" test.  *Taylor v. Waddell & Reed*, Case No. 09cv2909 AJB (WVG), 2012 LEXIS 212, at *11 (S.D. Cal. Jan. 3, 2012).  *See also Lint v. Northwestern Mut. Life Ins. Co.*, Case No. 09CV1373 DMS (RBB), 2010 WL 4809604 at *3 (S.D. Cal. Nov. 19, 2010) (finding that spending 10-20 percent of the time outside of the office engaged in sales activity is sufficient for the exemption).  "Nothing in [29 C.F.R. § 541.701] requires that, to meet the definition of 'customarily and regularly,' a task be performed more than once a week or that a task be performed each and every workweek."  WHD Opinion Letter FLSA 2007-2 (citing 69 Fed. Reg. at 22,187), attached as Ex. 19; *Billingslea v. Brayson Homes, Inc.*, Civil Action No. 1:04-CV-00962-JEC, 2007 U.S. Dist. LEXIS 52566, *4-14 (N.D. Ga. Jul. 19, 2007).

Thus, to show that Plaintiffs were improperly classified as exempt under the outside sales exemption requires a case-by-case analysis in which, for example, Plaintiffs would need to show that they were not engaged in sales outside of the office more than once a week.  And, by the

---

[3] The Declarations of MSRs filed by ACS also confirm that selling AAA memberships is their primary duty.  (Ex. 1, Jackson Decl. ¶ 4; Ex. 2, Tenhet Decl. ¶ 4; Ex. 3, Tau Decl. ¶ 4; Ex. 4, Johansen Decl. ¶ 4; Ex. 5, Durojaiye Decl. ¶ 4; Ex. 6, Lickfeld Decl. ¶ 4; Ex. 7, Farrell Decl. ¶ 4; Ex. 8, Fowler Decl. ¶ 4; Ex. 9, Jones Decl. ¶ 4; Ex. 10, Hanna Decl. ¶ 4; Ex. 11, Davis Decl. ¶ 4; Ex. 12, Staton Decl. ¶ 4; Ex. 13, Sherwood Decl. ¶ 4; Ex. 14, Goodwin Decl. ¶ 4; Ex. 15, Rhea Decl. ¶ 4; Ex. 16, Smith Decl. ¶ 4; Ex. 17, Sargent ¶ 4; Ex. 18, Trammell Decl. ¶ 4.)

same token, and before a conditional class is certified, Plaintiffs must show that ACS had a "single, FLSA-violating policy" of requiring all potential class members to make sales outside of the office less than "customarily or regularly," i.e., less than once a week. This they have not and cannot do.

**B.      Plaintiffs' own Declarations and Motion demonstrate that this is not a proper case for certification.**

In the Plaintiffs' Motion and attached Declarations, Plaintiffs make cursory allegations, claiming that they were primarily required to make sales by telephone, but they fail to provide the amount of time they attributed to each of their sales activities, such as business canvassing, running booths at various events, establishing group accounts, obtaining referrals, and completing outbound sales calls.[4]   Plaintiffs, in their own Declarations, have not presented sufficient evidence to establish that they were improperly classified as exempt employees. More importantly, Plaintiffs admit that "[i]t is possible that some Membership [Sales Representatives] primarily engage in outside sales and are exempt under the FLSA." (Pls. Memo. at 5, Dkt. No. 11.)  For this last reason alone, Plaintiffs' Motion should be denied.

In *O'Brien*, the Sixth Circuit specifically noted that for a class to be conditionally certified, Plaintiffs must allege that a "single, FLSA-violating policy . . . proves a violation as to **all the plaintiffs.**" *O'Brien,* 575 F.3d at 585 (emphasis added). Here, Plaintiffs admit that ACS' alleged "single, FLSA-violating policy," classifying MSRs as exempt based on the outside sales

---

[4] Due to the cursory nature of Plaintiffs' Declarations, ACS has filed a Notice of Objection and/or Motion to Strike Plaintiffs' Declarations.  *See Harrison v. McDonald's Corp.* 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005) ("Courts, however, have repeatedly held that only admissible evidence may be considered in connection with a § 216(b) motion."); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2004 WL 1675925, at *28 (D. Or. July 27, 2004) ("plaintiffs are required to show through admissible evidence a 'reasonable basis' for their claim that the employer acted on a class-wide basis.").

exemption, does not prove a violation as to **all** MSRs.  Plaintiffs admit that some MSRs were properly classified.  Thus, the *O'Brien* standard has not been satisfied.

This is not the typical misclassification case in which the named plaintiffs claim that a whole class of employees, such as pharmaceutical representatives, were improperly classified. Nor is this case analogous to an entire class of IT help desk employees being certified because as alleged, their duties clearly do not satisfy the computer exemption, or likewise, an entire group of assistant managers who have no executive duties to satisfy the executive exemption.  In those instances, conditional certification of a class of plaintiffs is more often found because, if the exemption is found invalid, **all** of the misclassified employees would be affected.  Here, Plaintiffs themselves have conceded that there was no single policy of misclassification and that some MSRs are, in fact, exempt.  Since there is no single FLSA violating policy here, the court would ultimately have to determine, on an individual basis, whether a MSR was improperly classified.  Plaintiffs' admission that some MSRs are exempt, thereby requiring an individual by individual analysis of each MSR, makes this case unsuitable for conditional class certification.

The present action is similar to that of *Bernal v. Trueblue, Inc.*, Case No. 1:08-CV-507, 2010 U.S. Dist. LEXIS 49354, at *1 (M.D. Mich. May 19, 2010).  In that case, the plaintiffs claimed that their employer violated the FLSA by taking fees out of their wages when the plaintiffs elected to use cash-dispensing machines instead of receiving a paycheck.  The plaintiffs filed a complaint alleging that they were not paid minimum wages in violation of the FLSA, and later moved to conditionally certify a class of all plaintiffs that were paid by means of a cash-dispensing machine.  *Id.* at 5-6.  In considering whether to grant the plaintiffs' motion, the court cited the conditional certification standard set out in *O'Brien*, and then noted:

> the pleadings and affidavits from named Plaintiffs . . . taken together, fail to allege that this unified policy resulted in FLSA violations to each member of the

putative class. . . .   The complaint . . . states that the [cash dispensing machines] result in a violation of the FLSA, but only "*when the deduction causes the wages to be paid to an employee to be less than the FLSA minimum wage.*" . . . [A]t no point do Plaintiffs allege that every individual employed by [defendant] between May 30, 2005, and September 30, 2006, who used the [cash dispensing machines] to receive pay – i.e., the purported class – earned a rate of pay on the date that he or she used the [cash dispensing machines] that was low enough to reduce his or her wages to below the minimum. . . .   Plaintiffs ask the court to conditionally certify a class of, and facilitate notice to, thousands of individuals who used [cash dispensing machines], without even alleging that all of those individuals were ever victims of a FLSA violation.  Even under the lenient standard allowing for conditional certification on the pleadings and affidavits of named plaintiffs alone, conditional certification is not appropriate.

*Id.* at 11-13.  In the present case, like in *Bernal*, Plaintiffs have failed to allege that ACS employed a unified policy violating the FLSA, by virtue of their own admission the "policy" did not provide a violation as to all MSRs.  Plaintiffs' motion should therefore be denied.

### C.    The class Plaintiffs seek to certify is overbroad and impracticable.

Clearly recognizing that they cannot conditionally certify a class of all MSRs, Plaintiffs request to certify a class of "all Membership Salespeople, employed by ACS at any time up to three years before the filing of the Complaint, **whose primary duty and/or activity was inside sales.**"  (emphasis added)(Pls. Memo. at 14, Dkt. No. 11.)

Plaintiffs' request should be denied for a number of reasons.  First, they have not properly articulated the standard for the outside sales exemption.  As set out above, to qualify for the outside sales exemption, an employee must be "customarily and regularly" engaged in sales away from the office, which can be as infrequently as once a week.  The language suggested by Plaintiffs confuses the different elements of the outside sales exemption test and is much more expansive.  The primary duty must be selling. That is not contested here.  However, Plaintiffs' mix that concept with how often that selling must occur away from the business, i.e., "customarily and regularly." In other words, it is certainly possible that a MSR's "primary …

activity was inside sales," but they still "customarily and regularly" engaged in outside sales away from the business, which satisfies the exemption.  Plaintiffs' Motion has misstated the requirements of the outside sales exemption and therefore, misstated the potential class.

Next, Plaintiffs have not indicated how they propose sending the notice to only those MSRs whose "primary duty" was inside sales.  Even they suggest ACS does not keep track of those who focus on outside versus inside sales.  (Pls. Memo. at 12, Dkt. No. 11.)  Indeed, ACS' position is that its MSRs "customarily and regularly" engage in outside sales, so ACS cannot provide a list of employees whose "primary duty" is inside sales.

Moreover, Plaintiffs have not asked, nor should the Court hold, that notice be disseminated to all MSRs as Plaintiffs concede that not all MSRs are included in the proposed class.  If notice were sent to all MSRs, besides the utter unnecessary confusion it would cause, each MSR, presumably without counsel, would have to assess whether they qualify for the outside sales exemption.  As the Plaintiffs themselves (who have counsel) have had difficulties properly formulating the standard, this would be an unreasonable response to a Notice request that is facially impractical.

**D.    Plaintiffs are not similarly situated to other MSRs because the other MSRs customarily and regularly engaged in outside sales.**

Not only do Plaintiffs themselves fail to allege that they are similarly situated, the evidence indicates they are not similarly situated to the potential class.  In support of its Response to Plaintiffs' Motion, ACS has submitted eighteen Declarations from MSRs who worked at ACS' Memphis, Melbourne and Northlake locations, where either the named or sole opt-in Plaintiffs worked, as well as from Chattanooga, Nashville, Jacksonville, and Fort Pierce

locations.[5] (Exs. 1- 18.)  These Declarations make clear that the MSRs are not similarly situated to Plaintiffs, because they each spend sufficient time engaging in outside sales activities and employ different, individual methods of accomplishing those sales.  ACS has also submitted Declarations from Bill Latta, Senior Vice President, Motor Club (Ex. 20), Jim Bruhn, Area Executive Southern Region Rural (Ex. 21), Joe Castonguay, Director of Field Sales (Ex. 22), Steve Spradley, former Membership Sales Training Manager (Ex. 23), Brandi Weaver, Membership Sales Training Manager (Ex. 24), Karen Childress, Tennessee Account Executive (Ex. 25), Brenda Slupecki, Manager, Employee Relations (Ex. 26), Carolyn Williams, Memphis Sales Manager (Ex. 27), and Gordon Craig, Melbourne Sales Manager (Ex. 28).  These Declarations contradict any notion that there is any single FLSA violating policy, but instead, emphasize MSRs are field positions who engage in outside sales.

### 1.    Variety of Methods by which MSRs make sales.

In the Declarations from the MSRs  filed in support of ACS's Response, the MSRs state that they make sales in many different ways, and not just by telephone as Plaintiffs suggest. These methods include: making sales under group employer accounts, requiring MSRs to go to an employer's place of business, including hospitals, school systems, private schools, municipal and county governments, credit unions, and retail stores (and not to mention all the exempt time spent securing these group accounts); tables or booths at malls, health fairs, tradeshows, flea markets, community events, retail stores, public parks, car/motorcycle/boat/RV shows, public safety awareness expos, festivals, office parks, women's shows, homeowners association events,

---

[5] Less Plaintiffs question why ACS did not secure Declarations from every office or MSR, that is obviously not required and would result in tremendous expense. Declarations were collected from the branches at which Plaintiffs or the Opt-in worked, from Ft. Pierce since that Sales Manager also oversees Melbourne, from the other branches in Tennessee since the case sits within the Western District of Tennessee, and another randomly selected office in Jacksonville.

run/walks, professional shows, health and wellness fairs, job fairs, open enrollments, car washes, organizations, union halls, Wal-Mart, car dealerships, driver's license offices, restaurants, parades, and home shows; canvassing business, such as health clubs, retirement homes, and professional (medical, dental) offices; and attending networking events.[6]  (Jackson Decl. ¶¶ 4, 8-10; Tenhet Decl. ¶¶ 4, 9-12; Tau Decl. ¶¶ 4, 8, 9; Johansen Decl. ¶¶ 4, 9, 10; Durojaiye ¶¶ 4, 10-12; Lickfeld Decl. ¶¶ 4, 8-11; Farrell Decl. ¶¶ 4, 8-10, 13, 14; Fowler Decl. ¶¶ 4, 9-12, 14, 15; Jones Decl. ¶¶ 4, 9-12, 15; Hanna Decl. ¶¶ 4, 9-12, 15; Davis Decl. ¶¶ 4, 9-13, 15; Staton Decl. ¶¶ 4, 9-13; Sherwood Decl. ¶¶ 4, 9-11, 13, 14; Goodwin Decl. ¶¶ 4, 9, 10, 13, 14; Rhea Decl. ¶¶ 4, 10, 13-15; Smith Decl. ¶¶ 4, 8-10, 12; Sargent Decl. ¶¶ 4, 9-12, 15; Trammell Decl. ¶¶ 4, 7-12; Craig Decl. ¶¶ 4, 6, 8-15; Williams Decl. ¶¶ 3-4, 7, 11-16.)

### 2.    Percentage of time performing each sale method.

In Plaintiffs' Declarations, they suggest that they are essentially telemarketers and do nothing more than sell via telephone.  Contrary to Plaintiffs' claims, MSRs "customarily and regularly" engage in outside sales.  Additionally, each MSR focuses on the outside sales activity that works best for them and best utilizes their sales skills.  (Castonguay Decl. ¶ 12.)

ACS has submitted Declarations from all three MSRs from its Memphis office, the same location in which Plaintiffs Bearden and Pryor were employed.  Sonta Jackson indicated that she spends approximately 50% of her time, 18-25 hours a week, canvassing businesses, and another 12-15 hours a week, 35% of her time, attempting to secure group accounts, but at most, only 15% of her time making telephone sales.  (Jackson Decl. ¶¶ 10, 13, 15, 22.)  Terrell Tenhet

---

[6] The position description indicates that a MSR spends 85% of his or her time selling "AAA Memberships through a variety of different outside sales methods including but not limited to the following; field booth/table at department stores, flea markets, malls, fairs, festivals and large show events, telephone sales, Employer presentation/on site to Employees, community and business contacts."  (Latta Decl. ¶ 5, Ex. A.)

spends 20% of his time arranging and working booths, 20% of his time canvassing businesses, 20% of his time on group sales, and at most up to 40% of his time selling memberships from phone lists. (Tenhet Decl. ¶¶ 10, 11, 14, 15.)  Jimmy Trammell spends anywhere from 33% to 50% of his time working on employer group accounts, canvassing, and working outside events. He spends time every week outside of his home or office working group accounts, canvassing, or working outside events.  (Trammell Decl. ¶¶ 13, 19.)

Pennie Dannic Staton from the Melbourne branch, the only MSR employed there, and where Plaintiff Lemberger worked, spends four days a week at networking events.  She solicits sales at events and booths an average of two times a month, attends four to five festivals a month, and conducts onsites at employers' locations up to three times a month.  She estimates she spends around 6% of her time calling numbers off of AAA's 120 list, which is the only selling over the phone in which she participates.  (Staton Decl. ¶¶ 10, 11, 13, 17.)

Cathy Hanna and Bradley Davis are the only two MSRs at ACS' Fort Pierce branch.  Ms. Hanna spends four to five days a week outside of the office or home making or soliciting sales. (Hanna Decl. ¶ 19.)  Bradley Davis spends 70% of his time working on group accounts, and only about 30% making sales over the telephone from the phone lists.   He spends two to four mornings a week canvassing businesses, and about eight to ten days a month working booths. (Davis Decl. ¶¶ 10, 11, 12, 16.)

Neil Tau and Rachel Johansen are MSRs at ACS' Northlake, Georgia branch, the same branch at which Opt-in Plaintiff Taffel worked.  Mr. Tau spends up to 50% of his time working group accounts and estimates he spends 75% of his time on outside sales activities.  At most, he spends 25% of his time making telephone calls from AAA-provided list.  (Tau Decl. ¶¶ 9, 12,

17.)  Ms. Johansen indicated her outside sales activities are done more than on an occasional basis in any given week.  (Johansen Decl. ¶ 16.)

ACS has submitted five Declarations from MSRs in its Jacksonville office.  Vera Durojaiye spends the majority of her time outside of the office doing canvassing, networking, booths, and employer group account on-site visits.  She estimates she spends an average of four to five days outside of the office or home making or soliciting sales.  (Durojaiye Decl. ¶ 22.) Russell Lickfeld, a former MSR, spent the majority of his time on group accounts, managing between 80 and 110 employer group accounts.  He spent on average three or more days outside of the office or home making or soliciting sales.  At most, Lickfeld spent up to 20% of his time on making telephone calls from lists.  (Lickfeld Decl. ¶¶ 11, 13, 15, 21.)  Arlene Farrell spends about four hours each day meeting with businesses in an effort to set up group employer accounts.  (Farrell Decl. ¶¶ 14, 20.)  Anita Fowler spends at least two to three days a week outside of the office doing canvassing, networking, booths, and employer group account on-site visits.  While she has only been with AAA for 10 weeks, she has already solicited sales at booths for six events, and she has twenty-five employer group accounts.  (Fowler Decl. ¶¶ 10, 12, 22.) David Jones spends an average of four days outside of the office or home making or soliciting sales, about 50% of the time.  (Jones Decl. ¶ 22.)

Katherine Smith and Alison Sargent are MSRs from the Nashville, Tennessee office.  Ms. Smith has approximately 100 employer group accounts, and goes onsite to each employer at least once a year.  On average, Ms. Smith spends 80% of her time working to secure, visiting, and servicing employer group accounts and engaging in other activities to support her outside sales. (Smith Decl. ¶¶ 10, 19.)  Ms. Sargent also has about 100 employer group accounts, which she visits once or twice a year.  She spends 50% of her time outside the office working on employer

group accounts, and approximately 25% of her time on canvassing, networking, and booth sales. She only spends five hours a week making phone calls.  (Sargent Decl. ¶¶ 12, 16, 23.)

The remaining declarations are from the MSRs from the Chattanooga office.   Josh Sherwood spends one day a week working on employer group accounts and another day working on securing booths.  Additionally, he spends 10% of his time each week canvassing businesses, 10% of his time attending networking events, and 8 hours a week making calls off the phone lists.  (Sherwood Decl. ¶¶ 10, 11, 13, 14, 15.)  Tiffany Goodwin spends 50% of her time working on group sales.  She also spends 10 to 15 hours a week at networking events, and does two to three booths a month.  (Goodwin Decl. ¶¶ 12, 13, 14.)  David Rhea spends approximately 25 hours a week attempting to secure group accounts, 8 hours a week canvassing businesses, and 15 to 20 hours a week attending networking events. (Rhea Decl. ¶¶ 12, 14, 15.)

Each MSR is thus unique and structures his or her job differently.   Based on the information provided in their Declarations, each of them "customarily and regularly" performs sales activities outside of the office.  Accordingly, they are not similarly situated to the Plaintiffs, and they demonstrate the type of individual analysis that would need to be performed in determining whether a MSR qualifies under the outside sales exemption.

Additionally, at least one case has denied a motion to conditionally certify a class because it found that the employees were properly classified.   In *Olivo v. GMAC Mortgage Corporation*, 374 F. Supp.2d 545 (E.D. Mich. 2004), the Court stated:

> Based upon the foregoing, the Court finds that Defendant has met its burden and demonstrated that, generally, its loan officers primarily engage in sales, that a substantial percentage of the loan officers' time is devoted to generating sales outside of the office, and that a substantial percentage of any time spent at the office is "incidental to and in conjunction with" the loan officers' outside sales efforts. *See* 29 C.F.R. §§ 541.5, 541.502, and 541.503.

15

Since the Court finds that, generally, the outside sales exemption contained in 29 U.S.C. § 213(a)(1) applies to Defendant's loan officers, the Court concludes that Plaintiffs are unable to demonstrate that they, and the potential plaintiffs, were "victims of a common policy or plan that violated the law," and, therefore, that Plaintiffs have failed to demonstrate that they are "similarly situated" to other GMAC loan officers within the meaning of 29 U.S.C. § 216(b). . . . In essence, Defendant has demonstrated that the overtime requirements of the FLSA are incompatible with the individual character of the work of its loan officers. . . . Plaintiffs' Motion should be DENIED.

*Id.* at 551. Here, as the declarations submitted by ACS clearly suggest that the MSRs were properly classified, Plaintiffs' Motion should be denied.

### 3. Training Materials.

When MSRs are first hired, they understand that they are in a commission-only sales role. (*See, e.g.*, Jackson Decl. ¶ 5, Tenhet Decl. ¶ 5.) They also attend a week-long training class in Tampa, Florida. (Weaver Decl. ¶ 3.) Several hours of the week-long training class are dedicated to learning about the different sales methods. (Weaver Decl. ¶¶ 3-6; Spradley Decl. ¶¶3-4.) During this time, there is discussion of field activities such as running a booth, working events, canvassing for new business, group employer sales, and making phone calls from lead lists. Only limited time during training is spent on the topic of making calls from lead lists. (Tenhet Decl. ¶ 6; Durojaiye Decl. ¶ 6; Sargent Decl. ¶ 6; Williams Decl. ¶ 9; Weaver Decl ¶¶ 3-7; Spradley Decl. ¶¶ 4-9, Castonguay Decl. ¶¶ 5-6.) The training clearly evidences that the MSR position is a field position in which MSRs perform a variety of outside activities to generate and make sales. (Johansen Decl. ¶ 6; Durojaiye Decl. ¶ 6; Hanna Decl. ¶ 6; Davis Decl. ¶ 6; Staton Decl. ¶ 6; Sherwood Decl. ¶ 6; Goodwin Decl. ¶ 6; Rhea Decl. ¶ 6; Sargent Decl. ¶ 6.)

### 4. Each location has different requirements with respect to phone days and nights.

Plaintiffs claim that they were frequently urged to attend phone nights and days, and that all they did while attending was attempt to make sales from phone lists. The Declarations

16

submitted by ACS, however, demonstrate that this is inaccurate.  In the Memphis, Northlake, Chattanooga, Jacksonville, and Nashville offices, MSRs are not required to attend phone nights, which usually last from 1 to 3 hours.  (Jackson Decl. ¶ 18; Tenhet Decl. ¶ 17; Tau Decl. ¶ 13; Johansen Decl. ¶ 13; Durojaiye Decl. ¶ 18; Lickfeld Decl. ¶ 17; Farrell Decl. ¶ 17; Fowler Decl. ¶ 18; Jones Decl. ¶ 18; Sherwood Decl. ¶ 16; Goodwin Decl. ¶ 17; Rhea Decl. ¶ 18; Smith Decl. ¶ 15; Sargent Decl. ¶ 19; Trammell Decl. ¶ 16.)   The Fort Pierce and Melbourne branches do not have phone nights or phone days.  (Hanna Decl. ¶ 18; Davis Decl. ¶ 16; Staton Decl.¶ 19; Craig Decl. ¶ 18.)  In Memphis, Northlake, Jacksonville, and Nashville, phone days are earned based on sales.  (Jackson Decl. ¶ 18; Tenhet Decl. ¶ 17; Durojaiye Decl. ¶ 18; Lickfeld Decl. ¶ 17; Farrell Decl. ¶ 17; Fowler Decl. ¶ 18; Jones Decl. ¶ 18; Sherwood Decl. ¶ 16; Smith Decl. ¶ 15; Sargent Decl. ¶ 19.)  Even on phone days, MSRs can spend about 50% of their time on tasks related to their outside sales activities, which is exempt work under the regulations because it is incidental to their outside sales.  (Jackson Decl. ¶ 19; Tenhet Decl. ¶ 18; Tau Decl. ¶ 14; Durojaiye Decl. ¶ 19; Lickfeld Decl. ¶ 18; Farrell Decl. ¶ 18; Fowler Decl. ¶ 19; Jones Decl. ¶ 19; Sherwood Decl. ¶ 17; Goodwin Decl. ¶ 18; Rhea Decl. ¶ 19; Smith Decl. ¶ 16; Sargent Decl. ¶ 20; Trammell Decl. ¶ 17.)  MSRs thus do much more than just make phone calls off of lists.

### 5.    Plaintiffs' Declarations and Other Record Evidence.

In their Declarations, Plaintiffs have provided no information regarding the amount of time they spent performing sales activities other than making phone calls.  It is likely that even the Plaintiffs have "customarily and regularly" engaged in outside sales, disqualifying them from representing such a class.  For instance, with respect to Plaintiff Bearden, in an email sent to Training Manager Brandi Weaver seeking assistance in making sales and suggesting that she was not receiving that assistance from her Sales Manager Tom Sachse, Bearden states that she had

been business canvassing, working on groups, and networking.  (Weaver Decl. ¶ 16, Ex. G.)
That email was forwarded to Mr. Castonguay and Mr. Bruhn.  Mr. Castonguay, the Director of
Membership Field Sales, responded, "I would suggest that you go to some basics the old fashion
way and go business to business to sell one on one.  Walk into any business and ask 'have you
taken care of your AAA membership yet?"  (Castonguay Decl. ¶ 23, Ex. D.)  After Mr. Bruhn
responded, Bearden stated, "I have outside sales experience . . . .  I have been working the field,
and passing out cards, leaving take one stands and I set up onsite."  (Bruhn Decl. ¶ 17, Ex. D.)
Additionally, in a Declaration submitted by Ms. Jackson, she acknowledged she worked with
Bearden and observed Bearden engaging in outside sales.  She recalls Bearden working a
table/booth at a flea market and a large event in Union City, Tennessee.  (Jackson Decl. ¶ 25.)

There are similar records for each of the other Plaintiffs, including employee counseling
forms recommending that the Plaintiffs "use a variety of methods to acquire new members;
canvass small businesses, set up sales tables or booths at various locations or events, prospect for
group accounts . . ." (Slupecki Dec. ¶¶ 3-10, Exs. A-H; Craig Decl. ¶ 24 (reporting that Plaintiff
Lemberger "told me that he scheduled at least one in person meetings with businesses and
individuals each day".))  In an analysis performed by Mr. Castonguay, he determined that many
of the Plaintiffs' sales were a direct result of outside sales activities. (Castonguay Decl. ¶ 21, Ex.
B.)  Most tellingly, Memphis Sales Manager Tom Sachse sent Mr. Castonguay an email with the
Memphis office's Events List from August 26, 2010 to November 4, 2010.  The list indicated
that Mr. Sachse and at least one MSR attended events and met with groups frequently.  Nineteen
different events are listed for this timeframe.  (Castonguay Decl. ¶ 22 Ex. C.)

Lastly, Plaintiffs heavily rely on the Declaration of former Memphis Sales Manager Tom
Sachse, claiming that he is an unbiased witness.  Mr. Sachse was discharged from ACS in

September 2011, for a number of reasons, including lack of professionalism, making inappropriate racial comments, using poor judgment, an inability to lead, and failing to assist MSRs with basic daily concerns.  (Slupecki Decl. ¶ 10, Ex. I.)  After his termination, Mr. Sachse threatened ACS with a lawsuit, claiming that he "was aware of . . . potential legal action that [he] <u>may</u> be able to stop" if ACS reached a settlement with him personally.  He further stated, "I feel that based on any settlement we reach will help determine if the law suit [sic] grinds to a stops [sic].  **Therefore I ask that you propose a settlement to me ASAP**."  (Slupecki Decl. ¶ 12, Ex. J.)  After ACS refused to give in to his hostile demands, this lawsuit was filed.  Clearly, Mr. Sachse has a vendetta against ACS and is not an unbiased party.  Accordingly, for all of these reasons, Plaintiffs' Motion should be denied.

### III.   If a Class is Certified, it Should be Limited to Only those Locations From Which the Plaintiffs have Provided Declarations.

For the numerous reasons listed above, Plaintiffs' motion to conditionally certify should be denied in its entirety.  Declarations have been offered from various offices, including from ***all*** the MSRs currently employed in Melbourne and Memphis.  These declarations show that even employees employed at the branches at which Plaintiffs worked are not similarly situated to the Plaintiffs. However, if the Court should find that notice is appropriate, it should be limited to only those offices from which Plaintiffs have submitted declarations, Memphis and Melbourne.

Plaintiffs' Declarations allegedly relate to the practices at the Memphis and Melbourne offices. Nowhere do they provide any evidence that similar practices were in place at any of the other offices.  None of the Plaintiffs have worked at other offices, nor do they claim that they have ever visited them.[7]  Plaintiffs do not present any evidence that other MSRs made phone

---

[7] The Declarations submitted by ACS confirm that MSRs do not interact with MSRs from other offices and are not familiar with the work they perform.  (Jackson Decl. ¶ 26; Tenhet Decl. ¶ 23;

calls like them or to such an extent that would remove them from the outside sales exemption. Each office had its own manager.  That manager had no responsibility over any of the MSRs in other offices.  (Bruhn Decl. ¶ 4.)  ACS has also produced numerous affidavits from MSRs at other locations indicating that they "customarily and regularly" performed outside sales.

Numerous cases from the Sixth Circuit and others have limited notice to only those locations at which the plaintiffs have submitted declarations.  *See*, *e.g.*, *Stewart v. Cus Nashville. LLC*, Case No. 3:11-cv-0342, at *14 (M.D. Tenn. Feb. 13, 2012), attached as Ex. 29; *Ware v. T-Mobile USA*, Case No. 3:11-cv-411, 2011 U.S. Dist. LEXIS 127091, at *13-15 (M.D. Tenn. Nov. 2, 2011) (finding that while Plaintiffs were similarly situated, "they have not made a similar showing with respect to current and former employees at T-Mobile's other call centers nationwide" because plaintiffs "have not worked at any other T-Mobile call center outside of Nashville or Colorado Springs and have not presented a declaration from any current or former employee who worked at any such facility."); *Shabazz*, 2008 WL 1730318, at *3 (denying plaintiffs' request to extend conditional class of hourly employees beyond defendant's Nashville call center to include employees that worked at its Houston call center, where plaintiffs failed to produce a declaration from any current or former employee who worked at the Houston call center); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (limiting notice to only those potential plaintiffs who worked at the concept restaurants at which the plaintiffs worked); *Horne v. United Servs. Auto Ass'n*, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003) (finding that a plaintiff must show that "employees outside of the work location for which the plaintiff has provided evidence were similarly affected by the alleged work policies in order for

---

Tau Decl. ¶ 19; Johansen Decl. ¶ 18; Durojaiye Decl. ¶ 25; Lickfeld Decl. ¶ 24; Farrell Decl. ¶ 22; Fowler Decl. ¶ 25; Jones Decl. ¶ 25; Hanna Decl. ¶ 22; Staton Decl. ¶ 23; Sherwood Decl. ¶ 22.)

the court to certify a collective action which extends beyond the plaintiff's own work location."); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361-62 (M.D. Ala. 1999) (finding company-wide notice inappropriate because "while Plaintiffs have presented evidence that FLSA violations may exist with regard to certain hourly wage employees at Defendant's Dothan restaurant, there is a total dearth of factual support for Plaintiffs' allegations of widespread wrongdoing at Defendant's other restaurants.")   Accordingly, even if Plaintiffs' Motion is granted, notice should be limited to only ACS' Memphis and Melbourne branches.

**IV.     If Plaintiffs' Motion is Granted, Notice Should be Sent by First-Class Mail Only.**

Lastly, Plaintiffs request that notice be provided to the potential class members by a number of methods.  (Pls. Mot. at 2, Dkt. No. 10).  Plaintiffs request that ACS provide Plaintiffs' counsel with a list of names, last known addresses, and telephone numbers of potential plaintiffs, after which Plaintiffs will mail the notice to all potential plaintiffs.  Plaintiffs also request that ACS be required to post a notice in each of its offices, to include the notice with each employee's paycheck,[8] and to allow Plaintiffs' counsel to follow up with potential class members and answer any questions.  Plaintiffs suggest that the potential class members be given three months to file their consents to join.  Based on the case law of the Sixth Circuit, Plaintiffs' requests are overreaching and inappropriate.

In *Miller v. Jackson, Tennessee Hospital Co, LLC*, Case No. 3:10-1078, 2011 U.S. Dist. LEXIS 60594, *11 (M.D. Tenn. June 6, 2011), the Middle District of Tennessee considered what methods of providing notice were appropriate.  The plaintiffs proposed that the notice be sent to potential class members by U.S. Mail, posted on employee lunchroom bulletin boards, and included in employees' paychecks.  The Court rejected all of plaintiffs' requested methods of

---

[8] ACS notes that all of its MSRs are paid by direct deposit and none of them receive physical paychecks.  Delivering a copy of the notice with the paycheck is impossible.

providing notice other than first-class mail.  The Court stated, "'[i]n light of the fact that no physical paycheck is provided and the potential controversies that might be generated by lunch room postings . . ., the court finds that U.S. Mail, as the sole method of notice, is appropriate at this stage." *Id.* at *11.  Other courts have reached the same conclusion.  *See, e.g.*, *Lindberg v. Grady Moody*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011) ("In FLSA cases, first-class mail is generally considered to be the 'best notice practicable' to ensure that proper notice is received by potential class members.") (citing *Hinterberger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 U.S. Dist. LEXIS 97944, at *13 (W.D.N.Y. Oct. 21, 2009)); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 404 (D.N.J. 2008) (denying a plaintiff's request to post notice on "company bulletin-boards"); *Reitzer v. USB Fin. Servs.*, Inc., No. 2:08-CV-1235 (WJM), 2008 U.S. Dist. Lexis 71635, at *10-11 (D.N.J. Sept. 22, 2008) (finding that sending notice already puts putative class members on "notice of the collective action, making it unnecessary to conspicuously post the notice on [Defendant's] premises as requested by Plaintiffs.").  Accordingly, in the event that a class is certified and the Court permits notice to be sent to potential class members, the notice should be limited to being sent by first class mail.

Plaintiffs have also requested that the potential plaintiffs be given three months to file their notices of consent to join and opt-in to this action.  Some courts have found that a 90-day opt-in period was too long and limited the opt-in period to 45 days.  In *Heaps v. Safelite Solutions, LLC*, Case No. 2:10 CV 729, 2011 U.S. Dist. LEXIS 40089, *17 (S.D. Ohio Apr. 5, 2011), the Court noted that "[a] forty-five day opt-in period satisfies the need to prevent delay in this litigation while also allowing potential plaintiffs time to fully consider their options.  This Court previously determined a forty-five day opt-in period to be more efficient than a proposed sixty day opt-in period."  (citing *Baden-Winterwood v. Life Time Fitness*, No. 2:06-CV-99, 2006

U.S. Dist. LEXIS 53556, at *3  (S.D. Ohio Aug, 8, 2006) (stating that "sixty (60) days is too long and would needlessly delay the litigation")). *See also Harper*, 185 F.R.D. at 365; *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002); *Torres v. CSK Auto, Inc.*, No. EP-03-CA-113, 2003 U.S. Dist. LEXIS 25092, at *10 (W.D. Tex. Dec. 17, 2003).

Finally, Plaintiffs have requested that ACS be provided the phone numbers of all potential plaintiffs and that the Court enter an order permitting Plaintiffs' counsel to contact potential class members.  While ACS does not object to listing both Plaintiffs' and ACS' counsels' contact information in the notice,[9] ACS should not be required to provide the phone numbers of potential class members, and Plaintiffs' counsel should not be permitted to initiate contact by phone with potential class members (or to use Mr. Sachse for the same).  Tennessee Rule of Professional Conduct 7.3 specifically prohibits an attorney from soliciting potential clients by telephone.  Additionally, after receiving the notice, the Plaintiffs would not have to retain Plaintiffs' counsel and could retain any attorney of their choosing.  *See Yaklin v. W-H Energy Servs. Inc.*, No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008) ("The Court agrees that the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case.").  Therefore, any direct solicitation by Plaintiffs' counsel should be prohibited.

## V.    Conclusion

Based on the foregoing arguments and record evidence, ACS respectfully requests that Plaintiffs' Motion to Conditionally Certify Class and Facilitate Notice be denied in its entirety because Plaintiffs have failed to satisfy the standard for conditional certification.

---

[9] *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 254-55 (M.D. Tenn. 1996) (finding that defense counsel's name and contact information be included in Notice in the interest of full disclosure to the Notice recipients).

Dated this 28th day of March 2012.

Respectfully submitted,

FISHER & PHILLIPS LLP

/s/Jason M. Leo
Christine E. Howard, Esq.
Florida Bar No.: 872229
choward@laborlawyers.com
Jason M. Leo, Esq.
Florida Bar No.: 0059767
jleo@laborlawyers.com
2300 SunTrust Financial Centre
401 E. Jackson Street
Tampa, FL 33602
Telephone:     (813) 769-7500
Facsimile:     (813) 769-7501

Jeff Weintraub
Tennessee Bar No. 009686
jweintraub@laborlawyers.com
1715 Aaron Brenner Drive, Suite 312
Memphis, TN  38120
Telephone:     (901) 526-0431
Facsimile:     (901) 526-8183
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I certify that on March 28, 2012, I electronically filed the foregoing pleading with the

Clerk of Court using the CM/ECF system which will automatically send notification of such

filing to the following attorney of record:

Matthew P. Cavitch
The Cavitch Law Firm
11150 Glen Birnham
Memphis, Tennessee 38028
mcavitch@bellsouth.net

/s/Jason M. Leo
Attorney

24